1998 OK CR 25

**Garry Thomas ALLEN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**Nos. C–93–1121, C–88–37.**

Court of Criminal Appeals of Oklahoma.

April 15, 1998.

Carolyn L. Merritt, Assistant Public Defender, Oklahoma County Public Defender, Oklahoma City, for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, William L. Humes, Assistant Attorney General, Oklahoma City, for appellee on appeal.

## OPINION ON REMAND FROM THE UNITED STATES SUPREME COURT

LANE, Judge:

¶1 Garry Thomas Allen entered a blind plea of guilty to the crime of First Degree Murder in Oklahoma County District Court Case No. CRF–86–6295. He was sentenced to death. This Court affirmed judgment, but vacated and remanded the death sentence, for the trial court had not considered the sentencing option of life without possibility of parole which had gone into effect ten days earlier. *Allen v. State*, 1991 OK CR 35, 821 P.2d 371 (C–88–37)(*Allen I*). On remand Allen was again sentenced to death, and we affirmed the sentence in *Allen v. State*, 1996 OK CR 9, 923 P.2d 613 (C–93–1121)(*Allen II*). The United States Supreme Court granted certiorari on the issue of Allen's competence to enter a plea, and remanded the cause to us for reconsideration in light of *Cooper v. Oklahoma*, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498.[1]

---

1. The issue of competency to enter a plea was raised in Case. No. C–88–1991 (*Allen I*), not Case No. C–93–1121 (*Allen II*).

¶2 An overview of the state's competency procedures is the necessary starting point for consideration of this issue. A criminal defendant must be competent to go to trial or to enter a plea. In the pre-trial context, the question of competency may be raised by the prosecutor, the defendant, defense counsel, or by the court *sua sponte.* 22 O.S.1991, § 1175.2. Upon the filing of an application for determination of competency, the court holds a hearing to examine the application and determine if sufficient facts are alleged to create "a doubt" as to the competency of the defendant. 22 O.S.1991, § 1175.3. If the court finds "a doubt" as to the competency of the defendant at this hearing, the defendant is ordered to undergo an examination by "doctors or appropriate technicians." *Id.*

¶3 The examiner is ordered by the court to make the following determinations: 1) is this person able to appreciate the nature of the charges against him; 2) is this person able to consult with his lawyer and rationally assist in the preparation of his defense; 3) if the answer to question 1 or 2 is no, can the person attain competency within a reasonable time if provided with a course of treatment, therapy or training; 4) is the person a mentally ill person or a person requiring treatment as defined by statute; and 5) if the person were released without treatment, therapy or training would he probably pose a significant threat to the life or safety of himself or others. 22 O.S.1991, § 1175.3(E).

¶4 After these determinations have been made, a post-examination competency hearing is held. 22 O.S.1991, § 1175.4 Evidence regarding competence to stand trial is presented, and the judge, or jury if requested by the defendant, decides whether the defendant is competent to stand trial. This is where *Cooper* comes into play. At the post-examination competency hearing the defendant is presumed competent to stand trial, and bears the burden to prove incompetence. The pre-*Cooper* standard of *clear and convincing* proof was held violative of due process, for it could force a defendant to trial who, more likely than not, was incompetent. *Cooper,* 517 U.S. at 368–69, 116 S.Ct. at 1384. Oklahoma has modified this standard to a preponderance of the evidence. 22 O.S. Supp.1996, § 1175.4(B).

¶5 In the plea context, the trial judge is charged in every case with the duty to determine whether the defendant is competent to enter the plea. *King v. State,* 1976 OK CR 103 ¶10, 553 P.2d 529, 534. This is accomplished by: 1) appropriate interrogation of the defendant, and defense counsel if the defendant is represented, regarding the defendant's past and present mental state; and 2) observation of the defendant's behavior before the court. *Id.* If a "substantial question" as to the defendant's competency exists, the defendant shall be committed for a competency evaluation as provided in 22 O.S. 1991, § 1172. *Id.* In practice there is no difference in the quantum of proof required to raise a "doubt" as to competence in the pre-trial context, or a "substantial doubt" in the plea context. With these procedures in mind, we move to the facts of the case before us.

¶6 Garry Thomas Allen originally planned to go to trial. His attorney filed a motion requesting a competency hearing. A doubt was raised as to Allen's competency to proceed to trial, and the court ordered Allen committed to the Department of Mental Health for observation, treatment and examination. Allen remained committed for four months.

¶7 At the end of this period the examining psychiatrist specifically found Allen was: 1) able to appreciate the nature of the charges against him; 2) able to consult with his lawyer and rationally assist in the preparation of his defense; 3) not a mentally ill person and did not require treatment; and 4) if he were released without treatment, therapy or training he probably would not pose a significant threat to the life or safety of himself or others. As provided by statute, the matter was set for post-examination competency hearing. Allen requested, and was granted a jury trial on the matter.

¶8 Allen's witnesses consisted of the neurosurgeon who operated on him to repair damage from a gunshot wound to the face which he sustained during his arrest, the clinical psychologist whose finding of incom-

petence supported his original motion for a competency evaluation, his father, his sister, and one of his defense attorneys. The neurosurgeon testified Allen suffered some physical damage to the frontal lobe of the brain, but he could form no opinion as to Allen's competence to stand trial. The clinical psychologist testified to the reasons he found Allen incompetent originally, and on cross-examination testified he agreed with the most recent report that Allen was now competent to stand trial. Allen's father and sister testified Allen would not discuss details of the case with them. The only evidence supporting a finding that Allen was unable to assist with his defense was presented by testimony from one of his defense attorneys who, the record indicates, was withdrawing from the case because he was leaving the Public Defender's office and going into private practice.

¶ 9 The state presented evidence from the licensed psychiatric resident who performed the court-ordered evaluation, the ocularist who constructed Allen's artificial eye and who had approximately seven hours of contact with Allen, the doctor at the Oklahoma County jail who saw Allen twice a week during the previous six months, the surgeon who performed an ear operation on Allen to remove debris and infection resulting from the gunshot wound, a jail LPN nurse, and the court-appointed psychologist who examined Allen on behalf of the defense. Each of these witnesses testified to Allen's ability to communicate rationally, and to their belief he was competent to stand trial.

¶ 10 The court-appointed psychologist who examined Allen on behalf of the defense testified she administered the following tests: 1) the Wechsler Adult Intelligence Scale which tests for long term memory; 2) the Wechsler Vocabulary Test which indicates general intelligence; 3) the Bender Gestalt Visual Motor Test which screens for organic brain problems; and 4) the "draw-a-person" test which reveals intellectual and personality information. She found "soft organic signs" evidencing "some visual motor problems", but concluded these did not impact on Allen's competency to stand trial. The psychiatrist who performed the court-ordered competency evaluation noted Allen's depression and history of substance abuse and concluded these did not cause him to lack competence to proceed to trial.

¶ 11 The question of Allen's competence to stand trial was then given to the jury. The jury was instructed on the clear and convincing standard of proof, and found Allen competent to stand trial. Had Allen proceeded to trial, further analysis under *Cooper* would be relevant. However, Allen did not proceed to trial, he decided to plead guilty.

¶ 12 Three weeks after the post-examination competency hearing, Allen appeared before another district court judge to enter a blind plea of guilty. Prior to accepting the plea, the trial court asked Allen and his attorney appropriate questions to determine Allen's present competency to enter a plea as required by *King*. 1976 OK CR 103, ¶ 10, 553 P.2d at 534. The following exchange occurred between the trial judge, Allen, and his attorney:

Q: (By the Court) Your judgment is good today?

A: (Allen) I think so.

Q: Do you know what you are doing here?

A: Yes.

Q: And you know why you are here?

A: Yes.

Q: Have you ever been treated by a doctor or confined in a hospital for mental illness?

A: No.

COUNSEL: Judge, he was sent to Eastern State Hospital and spent about 4 months there. He was there for evaluation and treatment, after November of '86 he was returned as competent.

Q: That was not just for competency determination, but for actual treatment?

COUNSEL: I believe he was given medication while he was there and the determination at the very beginning was that he was not competent, and then some 4 months later he was in fact returned as competent. We did have a competency trial last month before Judge Cannon, and at that time the jury returned a verdict of competent as well.

Q: The jury determined him to be competent?

COUNSEL: Yes, sir.

Q: What was the date of the competency hearing? Would that be October the 20th?

COUNSEL: I believe it started on the 19th and the verdict was returned on the 20th of October?

Q: Ms. Baumann, do you have any reason to believe that Mr. Allen is not mentally competent to appreciate and understand the nature, purpose and consequences of this proceeding?

A: No your honor.

Q: Has he assisted you in presenting any defense he may have to this charge?

A: Yes, your honor.

Q: Do you have any reason to believe he was not mentally competent to appreciate and understand his acts at the time they were committed and out of which this charge arose?

A: Not at this time, Your Honor.

¶ 13 Finding no question as to Allen's competency to enter a plea, the trial court proceeded with the plea procedure. The trial court advised Allen of the trial rights he was waiving as a result of entering a plea, he determined the plea was voluntary, and he established a factual basis for the plea on the record. Nothing in the transcript of these proceedings, or in the original record as a whole suggests Allen was not competent to enter his plea.

¶ 14 The statement of Allen's attorney is of particular significance here. Three weeks earlier at the post-examination competency hearing, she had questioned co-counsel regarding Allen's ability to assist with his defense. The elicited testimony was the only evidence supporting the allegation Allen was not competent to stand trial. At the plea hearing, as an officer of the court, defense counsel told the presiding judge Allen had assisted her with his defense. Thus, the one issue which raised a question as to Allen's competence at the post-examination competency hearing, his ability to assist counsel with his defense, had been resolved. There was no longer any evidence to support a doubt as to Allen's competence.

¶ 15 Given the procedural posture and facts of this case, the plea proceeding was not tainted by the post-examination competency hearing held three weeks earlier. At the plea hearing the trial judge relied on his personal interrogation of Allen, his personal interrogation of Allen's counsel, and his personal observation of Allen's demeanor. None of the evidence raised any doubt as to Allen's competence to enter a plea.

### DECISION

¶ 16 We have reconsidered our finding that Allen was competent to enter a plea of guilty to the charge of First Degree Murder in light of *Cooper.* We affirm the finding of competence, we find *Cooper* has no relevance to this case, and we reinstate the opinions set forth in *Allen I,* and *Allen II.*

CHAPEL, P.J., and STRUBHAR, V.P.J., and LUMPKIN and JOHNSON, JJ., concur.

